# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | NO. 72230-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TAMISHA PEARSON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 29, 2016 |
| | ) | |

LAU, J. — Tamisha Pearson appeals her conviction on one count of driving under the influence of marijuana. She contends the trial court erred when it admitted the results of a warrantless blood test on grounds the dissipating tetrahydrocannabinol (THC) concentration in her bloodstream constituted an exigency sufficient to forgo the warrant requirement. She also argues the trial court erroneously permitted testimony of a per se legal limit of THC concentration not in effect at the time of the alleged offense. She also claims the trial court abused its discretion when it rejected a proposed jury instruction stating that it is not unlawful to drive after consuming drugs.

We conclude the trial court committed prejudicial error when it admitted the blood test result and allowed the City to present evidence of the per se legal THC limit not in effect at the time of the offense. We also conclude the trial court properly refused to give Pearson's proposed jury instruction where other instructions allowed her to argue her theory to the jury. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

### The Pedestrian-vehicle Accident

Tamisha Pearson suffers from a variety of health conditions for which she is authorized to consume medicinal marijuana. On February 3, 2012, at 3:23 pm, Pearson struck a pedestrian with her car. Pearson pulled over and called 911. Seattle Police Officers Victor Pirak and Michael Jongma arrived at 4:06 pm. Officer Jongma is a drug recognition expert. Pearson initially denied consuming any drugs or alcohol that day. She agreed to perform field sobriety tests.

Officer Jongma testified that Pearson's behavior during the sobriety tests suggested impairment. First, she recited the alphabet "at an unsteady rate," omitting some letters. Clerk's Papers (CP) at 411. When Officer Jongma asked Pearson to count backwards from 53 to 36, Pearson counted from 53 to 50 and then asked him to repeat the instructions. She counted from 53 to 47, repeated 47, counted down to 37, and asked if that was where she was supposed to stop. Officer Jongma tested Pearson's eyesight and noted a lack of convergence. Officer Jongma asked Pearson to close her eyes, tilt her head back, and estimate when 30 seconds had passed. Pearson

lowered her head, opened her eyes, and said "stop" after approximately 14 seconds. CP at 413-14. Pearson's performance of the walk-and-turn test varied slightly from Officer Jongma's instructions.[1] When Officer Jongma asked Pearson to stand on one leg, she stood for approximately 21 seconds before she swayed and put her foot down. She lasted 16 seconds on her other foot. Pearson successfully complied with a finger-to-nose test. Officer Jongma administered a breathalyzer test, which indicated no alcohol present. Officer Jongma concluded some of Pearson's behavior during the sobriety tests indicated she was impaired. Pearson told Officer Jongma that she is authorized to consume medicinal marijuana and that she had smoked earlier in the day.[2] Officer Jongma arrested Pearson for suspicion of vehicular assault and driving under the influence.[3]

Officer Jongma transported Pearson to Harborview Medical Center for a blood draw. They arrived at the hospital at approximately 5:26 pm—2 hours after the initial collision and 1 hour and 20 minutes after Officer Jongma arrived on the scene. At approximately 5:50 pm, a nurse drew Pearson's blood without her consent and without a warrant. A toxicologist analyzed Pearson's blood sample for cannabinoids on

---

[1] "She did not put her arms down at her sides as instructed but kept them in her pockets of her jacket. On step two on the way out, she stopped and left a gap of approximately two inches from heel to toe, stopped and readjusted her footing prior to continuing. And during the turn she stopped. Instead of turning around with small steps counterclockwise, she did it in a modified two-step about-face clockwise." CP at 415. The City attorney stated that Officer Jongma was being "kind of picky on [the] instructions," but Officer Jongma responded that these were "validated tests" intended to "gauge a person's ability to perform . . . psychophysical tasks." CP at 415-16.

[2] At the CrR 3.6 suppression hearing, Officer Jongma testified that Pearson admitted to smoking "earlier in the day." CP at 204. During the trial, however, Officer Jongma testified that Pearson told him she had smoked at 8:30 or 9:00 am.

[3] Pearson was arrested for suspicion of both DUI and vehicular assault, but she was never charged with vehicular assault.

February 21, 2012. The analysis determined Pearson's THC concentration was approximately 20 nanograms.

On August 18, 2012, the City of Seattle charged Pearson in municipal court on one count of driving while under the influence of an intoxicating drug.[4] The court initially granted Pearson's motion to suppress the blood evidence.

Suppression Hearing

The court held an evidentiary hearing after the City filed a motion to reconsider. At the hearing, the City introduced testimony from forensic toxicologist Naziha Nuwayhid of the Washington State Toxicology Laboratory. Nuwayhid testified that THC dissipates from blood very quickly. "[W]henever somebody smokes marijuana, the THC level [in their blood] reaches its peak before the end of smoking. And by three to five hours, the THC level is below the detection limit of the lab." CP at 186. However, Nuwayhid also acknowledged that THC can be detected in the blood of a chronic user of marijuana for up to seven days, even if that user abstains from smoking marijuana.

The City also introduced testimony from Seattle Police Officer Eric Michl. Officer Michl testified that obtaining a warrant for blood test in a DUI scenario—usually done via e-mail—takes about an hour to an hour and a half. Officer Michl acknowledged that a telephonic warrant could be obtained. He did not specify how long that process took. After the evidentiary hearing, the court granted the City's motion for reconsideration, finding that exigent circumstances existed justifying the warrantless blood test.

---

[4] At the time of the offense, there was no per se legal limit for THC concentration in the blood. Thus, the City prosecuted Pearson under the "under the influence of or affected by a drug" prong of the DUI statute. The jury was instructed that the City must prove beyond a reasonable doubt that Pearson drove a vehicle on February 3, 2012, while "under the influence of or affected by drugs." CP at 49.

### The Per Se Legal Limit

At trial, the City introduced testimony of forensic toxicologist Justin Knoy of the Washington State Toxicology Laboratory. Over Pearson's objection, the City elicited testimony from Knoy that the per se legal limit of THC concentration under Washington law was 5 nanograms. No per se limit for THC concentration in Washington existed when the accident occurred.

### The Jury Instruction

The trial court rejected Pearson's proposed jury instruction:

> It is not unlawful for a person to consume a drug and drive. The law recognizes that a person may have consumed a drug and yet not be under the influence of it. It is not enough to prove merely that a driver had consumed a drug.

CP at 39.

### Discretionary Review

The jury convicted Pearson as charged. The superior court on RALJ appeal affirmed the conviction.[5]

Pearson sought discretionary review in this court on four issues: (1) whether exigent circumstances existed to justify the warrantless extraction of Pearson's blood, (2) whether exigent circumstances existed to justify the warrantless testing of Pearson's blood, (3) whether the trial court erred when it failed to include Pearson's proposed jury instruction, and (4) whether the trial court erred when it permitted Knoy to testify that the per se legal limit for THC concentration was 5 nanograms. We granted discretionary review.

---

[5] Rules for Appeal of Decisions of Courts of Limited Jurisdiction.

## ANALYSIS

### The Warrantless Blood Test

The City argues that the natural dissipation of THC concentration in Pearson's blood constituted exigent circumstances justifying the warrantless blood test. We disagree.

Both the federal and Washington constitutions protect individuals from unreasonable searches. The State's intrusion into a person's body to draw blood constitutes a search triggering these constitutional protections. See Missouri v. McNeely, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013); see also, State v. Judge, 100 Wn.2d 706, 711-12, 675 P.2d 219 (1984). Absent a recognized exception, a warrantless blood draw is unlawful. McNeely, ___133___, S. Ct. at 1558. One such exception allows a warrantless search if exigent circumstances exist. State v. Terranova, 105 Wn.2d 632, 644, 716 P.2d 295 (1986). The exception applies where "obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence." State v. Tibbles, 169 Wn.2d 364, 370, 236 P.3d 885 (2010) (quoting State v. Smith, 165 Wn.2d 511, 517, 199 P.3d 386 (2009)). The natural dissipation of an intoxicating substance in a suspect's blood may be a factor in determining whether exigent circumstances justify a warrantless blood search. McNeely, 133 S. Ct. at 1558. But "[a]ny exceptions to the warrant requirement are to be drawn carefully and interpreted jealously, with the burden placed on the party asserting the exception." State v. Grinier, 34 Wn. App. 164, 168, 659 P.2d 550 (1983). Accordingly, the State bears the burden of demonstrating by clear and convincing evidence that exigent

circumstances justified a warrantless search. State v. Garvin, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). Whether exigent circumstances exist to justify a warrantless blood test is a legal question we review de novo. State v. Martines, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015). We determine whether an exigency existed based on the totality of the circumstances. McNeely, 133 S. Ct. at 1559.[6]

In McNeely, the State acknowledged that the reasonableness of a warrantless search under the exigency exception must be evaluated based on the totality of the circumstances. The State maintained that a per se rule for blood testing in drunk driving cases is necessary because alcohol naturally dissipates. The State asserted that as a result, it is categorically reasonable for police officers to obtain a warrantless blood sample. The Court held that the natural dissipation of alcohol in the bloodstream is a relevant consideration in an exigent circumstances analysis, but it is not a per se exigent circumstance that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood draws in drunk-driving cases. McNeely, 133 S. Ct. at 1568. The Court noted that technological advances had expedited the warrant application process. McNeely, 133 S. Ct. at 1562. Jurisdictions have developed streamlined means to shorten up the warrant process such as standard form warrants. But the Court also acknowledged that, in some cases, dissipation may nevertheless support an exigency. McNeely, 133 S. Ct. at 1561 ("We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted

---

[6] Here, the parties seem to agree on the facts. Therefore, the only issue we need to address is whether the undisputed facts amount to exigent circumstances sufficient to bypass the warrant requirement.

warrantless blood test."). For example, "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." McNeely, 133 S. Ct. at 1563.

Absent other extenuating circumstances, the natural dissipation of THC in a suspect's bloodstream will constitute an exigency sufficient to forgo the warrant requirement only if the party seeking to introduce evidence of a warrantless blood test can show that waiting to obtain a warrant would result in losing evidence of the defendant's intoxication. See, e.g., Byars v. State, 130 Nev. Adv. Op. 85, 336 P.3d 939 (2014). In Byars, a police officer took the defendant to a hospital for a warrantless blood test after the defendant admitted to smoking marijuana five hours earlier. Byars, 336 P.3d at 942-43. The State argued that blood evidence was admissible because the natural dissipation of THC concentration in the defendant's bloodstream constituted exigent circumstances justifying the search. Byars, 336 P.3d at 942-44. Citing extensively to McNeely, the court held that the exigent circumstances exception did not apply because the State failed to "demonstrate that waiting for a warrant would result in losing evidence of Byar's intoxication." Byars, 336 P.3d at 944. The court noted the availability of a telephonic warrant and the process of obtaining a warrant would not have seriously delayed collecting the blood evidence:

> [T]he facts in the record suggest that time was not a factor in the officer's decision to take Byar's blood without a warrant. . . . There is no indication in the record that Trooper Murwin was prevented from seeking a warrant telephonically or that time was of the essence in securing the blood. There is also no indication in the record that the length of the warrant process would endanger the evidence Trooper Murwin sought to collect.

Byars, 336 P.3d at 944.

Byars' analysis is persuasive, and consistent with Washington authority. See State v. Hinshaw, 149 Wn. App. 747, 205 P.3d 178 (2009). In Hinshaw—decided before McNeely—officers entered the defendant's home without a warrant because of concern over the dissipation of his blood-alcohol concentration. Hinshaw, 149 Wn. App. at 751. As in Byars, the Hinshaw court concluded the State failed to show sufficient exigent circumstances because it failed to prove that a warrant could not be obtained before the evidence dissipated:

> "[T]he [S]tate failed to prove that a warrant, including a telephonic warrant, could not have been obtained within a reasonable time." . . . "[T]he potential destruction of evidence may justify a warrantless entry into a suspect's home 'if the state proves that the arresting officers could not have obtained a warrant before the alcohol in the suspect's body dissipated.'" [State v. Kruse, 220 Or. App. 38, 42, 184 P.3d 1182 (2008)] (quoting State v. Roberts, 75 Or. App. 292, 296, 706, P.2d 564 (1985)).
>
> This is precisely what the State failed to prove here—that a warrant could not be obtained before the evidence dissipated.

Hinshaw, 149 Wn. App. at 756. Therefore, "there is no justification for applying the exigent circumstances exception when 'officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search.'" Byars, 336 P.3d at 944 (quoting McNeely, 133 S. Ct. at 1561).

Here, the City argues that seeking a warrant would have imposed an unreasonable delay in collecting the blood sample. The undisputed evidence shows the accident occurred at 3:23 pm, and Officer Jongma arrived at 4:06 pm. Pearson told Officer Jongma that she smoked marijuana earlier in the day. He transported Pearson to the hospital at 4:57 pm. A nurse drew Pearson's blood around 5:50 pm. Officer Michl testified that obtaining a warrant usually takes between 60 to 90 minutes, but it

can take longer. He also said under the best circumstances, it can take an hour. He described the availability of municipal court, district court, and superior court judges to review and sign warrants. He also explained warrants can be secured via telephone.

Officer Jongma obtained a blood sample approximately 2.5 hours after the accident. Nuwayhid testified that "by three to five hours [after smoking marijuana], the THC level is below the detection limit of the lab." CP at 186. Given this window, the City argues that evidence of THC could have dissipated completely by the time Pearson's blood was drawn had Officer Jongma obtained a warrant.

The City failed to satisfy its heavy burden to show by clear and convincing evidence that a warrant could not have been obtained in a reasonable time. The City presented no evidence at the suppression hearing indicating why officers did not seek to obtain a warrant. Considering the totality of the circumstances, the record shows that obtaining a warrant would not have created a significant delay in collecting a blood sample.

Although both the City and the trial court relied heavily on the toxicologist's testimony that THC concentration dissipates completely in three to five hours, the toxicologist qualified this opinion. The toxicologist acknowledged other factors could affect dissipation. Nuwayhid testified that it could take longer for THC to dissipate depending on the dose: "what is found in the blood . . . depends on the dose that the person smokes. So the larger the amount which is smoked or the more potent the joint or blend is, the longer it takes for the THC level to go beyond the detection limit." CP at 195. The toxicologist also testified that she was aware of studies showing a test could detect THC in the blood of a chronic cannabis user even several days after that person

smoked marijuana. In this case, the undisputed evidence shows that Pearson consumes cannabis medicinally to treat symptoms of chronic illness.

But even accepting the three to five hour dissipation window, the record shows that another officer could have transported Pearson to the hospital while Officer Jongma obtained a warrant, thereby minimizing or eliminating any delay. In McNeely, the Court observed that the presence of other officers weighs against the conclusion that exigent circumstances existed:

> Consider, for example, a situation in which the warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer. In such a circumstance, there would be no plausible justification for an exception to the warrant requirement.

McNeely, 133 S. Ct. at 1561. Here, Officer Jongma testified that besides himself, there were eight other officers at the scene of the accident. Officer Jongma transported Pearson from the scene at 4:57 pm to collect a blood sample, and a nurse drew Pearson's blood nearly an hour later at 5:50 pm. Officer Michl testified that obtaining a warrant via e-mail typically took between 60 and 90 minutes. He also testified that a telephonic warrant was available. The accident happened on Friday afternoon, in Seattle on Rainier Avenue in a commercial area on a heavily travelled road. Under these circumstances, another officer could have transported Pearson to the hospital to collect a blood sample while Officer Jongma obtained a warrant. The delay—if any— would have been minimal. Given the City's heavy burden to justify the warrantless search, the City has failed to show that "the warrant process [would] significantly increase the delay before the blood test [was] conducted." McNeely, 133 S. Ct. at 1561.

-11-

Because the City failed to show by clear and convincing evidence that obtaining a warrant would have significantly delayed collecting a blood sample, the natural dissipation of THC in Pearson's bloodstream alone did not constitute an exigency sufficient to bypass the warrant requirement. As in McNeely, we hold that the natural dissipation of THC from the bloodstream is a relevant consideration in an exigent circumstances analysis but is not a per se exigent circumstance that justifies an exception to the warrant requirement for nonconsensual blood draws in DUI cases. Accordingly, we conclude that the warrantless blood draw here was not justified under the exigent circumstances exception to the warrant requirement.[7]

### Testimony of Per Se Legal THC Limit

Pearson also contends the trial court erred when it admitted evidence of the per se legal THC limit that went into effect after the alleged crime on grounds that defense counsel opened the door. We review evidentiary decisions for an abuse of discretion. State v. Johnson, 150 Wn. App. 663, 673, 208 P.3d 1265 (2009). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). Improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the evidence as a whole. State v. Neal, 144 Wn.2d 600, 30 P.3d 1255 (2001) (citation omitted). Evidentiary error is grounds for reversal only if it results in prejudice. State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). An error is prejudicial if "within reasonable probabilities, had the error not

_____

[7] Given our resolution of the warrantless blood test evidence, we need not address Pearson's additional argument that the analysis of her blood constituted a second "search" for purposes of the federal and Washington constitutions.

-12-

occurred, the outcome of the trial would have been materially affected." Smith, 106 Wn.2d at 780.

When the offense occurred in February 2012, no per se legal limit to the concentration of THC in the bloodstream existed. Pearson's trial occurred in July and August of 2013. By that time, Washington voters had passed initiative measure 502, which legalized possession of small amounts of marijuana. The same initiative also established a per se legal THC limit, making it a crime to drive with a blood THC concentration exceeding 5 nanograms. RCW 46.61.502(1)(b). Defense counsel elicited testimony that in February 2012 there was no per se legal limit to THC concentration. The trial court ruled that this evidence opened the door for the City to explore the issue, and the City elicited testimony that 5 nanograms was the legal limit:

> [THE CITY]: Do we currently have a limit on marijuana under the law?
>
> [WITNESS]: Yes. There is now currently a per se level with THC.
>
> [THE CITY]: What's that limit now?
>
> DEFENSE COUNSEL: Your Honor, I'm going to object as to—
>
> THE COURT: Overruled.
>
> DEFENSE COUNSEL: —the amount—
>
> THE WITNESS: 5 nanograms per milliliter.
>
> [THE CITY]: So that 5 nanograms—the defense was talking about the per se limit for alcohol, at 5 nanograms would be similar to the per se limit in alcohol.
>
> [WITNESS]: From a legal standpoint, yes.

CP at 585-86.

-13-

The trial court abused its discretion when it admitted this testimony. Evidence of the per se legal THC limit not in effect when the offense occurred was irrelevant to the central question at trial—whether Pearson's ability to drive was lessened in any appreciable degree by her use of marijuana. The evidence was highly prejudicial. The blood test showed that Pearson had a THC concentration of 20 nanograms. The City relied on the blood evidence and emphasized in its closing argument that Pearson's THC concentration was 20 nanograms. Evidence of the current per se legal THC limit of 5 nanograms invited the jury to retroactively apply law that was not in effect at the time of the alleged offense and conclude that the blood evidence alone was sufficient to prove guilt.[8] See State v. Edwards, 104 Wn.2d 63, 70-71, 701 P.2d 508 (1985) (Retroactively applying law not enacted at the time of the offense violates constitutional ex post facto principles).

The City defends the trial court's ruling, arguing Pearson "opened the door" to this testimony. See State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969); see also, State v. Fisher, 165 Wn.2d 727, 750, 202 P.3d 937 (2009) ("Where the defendant 'opened the door' to a particular subject, the State may pursue the subject to clarify a false impression."). The problem with this assertion is Pearson created no false or misleading impression when she elicited evidence about the lack of any per se THC limit in February 2012. The Gefeller rule's purpose is to prevent a party from mischaracterizing evidence by only revealing advantageous details of a particular subject. See Gefeller, 76 Wn.2d at 455. Pearson presented no false or misleading

---

[8] The jury was never cautioned about the limitations of this evidence. Indeed, the jury instructions told the jury to decide the facts based on the evidence.

evidence to justify admission of highly prejudicial evidence of the current per se legal limit of 5 nanograms. This evidence was not relevant to any issue in the trial and did not explain, clarify, or rebut Pearson's evidence that no per se legal limit was in effect at the time of the offense.[9]

We will not reverse an erroneous evidentiary ruling unless it materially affected the outcome of the trial. See State v. Goggin, 185 Wn. App. 59, 69, 339 P.3d 983 (2014). The City contends any error was harmless because of the other evidence of impairment presented at trial. But the blood evidence was central to the City's case. As discussed above, the prosecutor repeatedly mentioned Pearson's THC concentration level in closing argument. By also analogizing the current per se THC limit to the limit for blood alcohol concentration, the City invited the jury to base its verdict solely on Pearson's THC concentration. Evidence that Pearson had a THC concentration of 20 nanograms would be meaningless to the jury without reference to the per se legal limit.

The competing evidence of the marijuana's effect on Pearson's ability to drive was hotly contested at trial. For instance, to explain Pearson's alleged poor performance on the physical tests, the defense medical expert explained that Pearson suffered from lupus and fibromyalgia. These conditions may affect motor skills, such as balance.

Pearson also presented evidence from eye witnesses to the accident that raised questions on whether Pearson or the pedestrian was at fault for the collision. The core issue was whether Pearson's ability to drive was lessened to any appreciable degree by

---

[9] The trial court's "open door" ruling is also questionable because the court overruled the City's objection to Pearson's evidence that no per se legal limit was in effect at the time of the offense.

-15-

marijuana. Given the highly contested evidence presented, the jury could have inferred from the improper evidence that Pearson's driving was affected by the marijuana because her blood test result showed four times the per se legal limit in her blood. We are not confident that the outcome of the trial would have been the same without the current per se legal THC limit evidence.

<u>The Jury Instruction</u>

We next address whether the trial court erred when it rejected Pearson's proposed jury instruction. We review a trial court's rejection of a party's jury instruction for an abuse of discretion. <u>State v. Pesta</u>, 87 Wn. App. 515, 524, 942 P.2d 1013 (1997).[10] Although the proposed instruction here was an accurate statement of the law, the trial court did not abuse its discretion when it rejected the instruction because Pearson was able to argue her theory of the case without it.

While each party is entitled to have their theory of the case set forth in the court's instructions, the court nevertheless has considerable discretion in determining the wording of the instructions and which instructions to include. <u>State v. Dana</u>, 73 Wn.2d 533, 536, 439 P.2d 403 (1968). Jury instructions are sufficient if they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. <u>State v. Winings</u>, 126 Wn. App. 75, 86, 107 P.3d 141 (2005).

Pearson proposed, and the trial court rejected, a jury instruction providing:

---

[10] Pearson incorrectly asserts that review is de novo. But de novo review only applies to <u>included</u> instructions that allegedly contain an error of law. <u>State v. Winings</u>, 126 Wn. App. 75, 86, 107 P.3d 141 (2005). A trial court's decision not to include an instruction is reviewed for an abuse of discretion. <u>State v. Picard</u>, 90 Wn. App. 890, 902, 954 P.2d 336 (1998).

It is not unlawful for a person to consume a drug and drive. The law recognizes that a person may have consumed a drug and yet not be under the influence of it. It is not enough to prove merely that a driver had consumed a drug.

CP at 39. This instruction is an accurate statement of the law. The Washington Pattern Jury Instructions include a similar instruction:

[It is not unlawful for a person to consume [intoxicating liquor] [or] [marijuana] [or] [drugs] and drive a motor vehicle.] The law recognizes that a person may have consumed [intoxicating liquor] [or marijuana] [or] [drugs] and yet not be under the influence of it.

WPIC 92.10. The instruction derives from State v. Hurd, 5 Wn.2d 308, 316, 105 P.2d 59 (1940), State v. Hansen, 15 Wn. App. 95, 97, 546 P.2d 1242 (1976), and State v. Franco, 96 Wn.2d 816, 825, 639 P.2d 1320 (1982). Pearson relied on Hurd, Hansen, and Franco when she proposed the instruction.[11]

But the trial court is not required to include an instruction even if that instruction is legally accurate. State v. Hathaway, 161 Wn. App. 634, 647, 251 P.3d 253 (2011) ("it is not error for a trial court to refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its case theory."); see also In re Pers. Restraint of Domingo, 155 Wn.2d 356, 369, 119 P.3d 816 (2005) (Pattern jury instructions are not mandatory). The instructions here sufficiently informed the jury of the applicable law and allowed Pearson to argue her theory of the case. Jury instruction 5 provided:

To convict Tamisha Pearson of the crime of driving while under the influence, each of the following elements of the crime must be proved beyond a reasonable doubt:

---

[11] The record shows that the trial court refused the instruction because these three cases involved alcohol, not marijuana, and the trial court believed they were not analogous to this case.

-17-

(1) That on the 3rd day of February, 2012, Tamisha Pearson drove a motor vehicle;

(2) That at that time Tamisha Pearson was under the influence of or affected by a drug;

(3) That the acts occurred in Seattle, Washington.

If you find from the evidence that elements (1), (2), and (3) have been proven beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if after weighing all the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.

CP at 49. Jury instruction 6 provided:

A person is under the influence of or affected by the use of a drug if the person's ability to drive a motor vehicle is lessened in any appreciable degree.

CP at 50.

Pearson proposed her instruction because she wanted to argue that it "is not unlawful for a person to consume a drug and drive." CP at 39. But jury instruction 6 allowed her to make that argument. Under jury instruction 6, Pearson could argue that even though she had consumed marijuana, she was not guilty because her ability to drive was not "lessened in any appreciable degree." CP at 50. Pearson's closing argument shows she made that argument. During closing argument, Pearson acknowledged she had admitted to smoking marijuana and the blood test showed THC was in her system. But she contended that this evidence does not necessarily mean she was impaired: "[y]ou may have a number which lists the amount of active THC and it doesn't really mean anything. Why is that? Well, . . . what's really of consequence is how the person drove, how they interacted with the police officer, and how they did in

-18-

the field tests." CP at 710; <u>see</u> <u>also</u> CP at 711 ("The set science . . . there's no set agreement on what level a person is presumed impaired."). Under these circumstances, the trial did not abuse its discretion when it refused to include Pearson's proposed jury instruction because she was able to argue her theory of the case based on the instructions given.

CONCLUSION

For the reasons discussed above, we reverse and remand for further proceedings consistent with this opinion.

WE CONCUR: