IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49174-5-II |
| Respondent, | |
| v. | |
| BOB LeROY INMAN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J.  —  Bob LeRoy Inman appeals from the denial of his suppression motion and the resulting vehicular assault conviction.  Inman argues that the trial court erred when it denied his suppression motion because (1) probable cause did not support his driving while under the influence (DUI) arrest, (2) exigent circumstances did not exist, (3) the implied consent statute, former RCW 46.20.308(3) (2013), prohibited the warrantless blood draw, and (4) a warrant to test the blood was required.  We affirm.

FACTS

I. BACKGROUND[1]

In May 2015, Inman and Margie Vanderhoof were injured in a motorcycle accident on a rural road. Inman was the driver of the motorcycle and Vanderhoof was his passenger. Captain Tim Manly, the first paramedic on the scene, observed a motorcycle in a ditch and two people lying down in a driveway approximately 20 to 25 feet away. Captain Manly observed that Inman had facial trauma, including bleeding and abrasions on the face, and a deformed helmet. Based on Inman's injuries, Captain Manly believed that the accident was a high-trauma incident.

Captain Manly learned from a bystander that Inman had been unconscious for approximately five minutes after the collision before regaining consciousness. Manly administered emergency treatment to Inman, which included placing Inman in a C-Spine, a device designed to immobilize the spine to prevent paralysis.

While Captain Manly provided Inman with treatment, Sergeant Galin Hester of the Washington State Patrol contacted Vanderhoof, who complained of pelvic pain. Sergeant Hester spoke with Inman and smelled intoxicants on him.

Jefferson County Deputy Brandon Przygocki arrived on the scene and observed a motorcycle in a ditch with significant front-end damage. Deputy Przygocki ran the license plate through dispatch and learned the motorcycle was registered to Inman. Deputy Przygocki learned from Sergeant Hester that Inman was in the ambulance and smelled of alcohol. Deputy Przygocki contacted Inman in the ambulance and, smelling alcohol, asked whether Inman had been drinking

---

[1] The facts are based on unchallenged findings from the suppression hearing and are thus verities on appeal. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005).

and driving. Inman admitted he had been driving the motorcycle and that he had been drinking before he drove.

Deputy Przygocki was unsure of the extent of Vanderhoof's injuries but believed he at least had probable cause to believe Inman was driving under the influence. Helicopters were coming to medivac Inman and Vanderhoof to the nearest trauma center. Deputy Przygocki knew that preparation of a search warrant affidavit takes 30 minutes and obtaining judicial approval of a warrant takes at least 15 minutes. Deputy Przygocki lacked reliable cell phone coverage in the rural area. Deputy Przygocki conducted a warrantless blood draw after reading a special evidence warning to Inman informing him that he was under arrest and that a blood sample was being seized to determine the concentration of alcohol in his blood.

There is a process by which a search warrant for a blood draw may be obtained telephonically and executed by an officer at the hospital to which Inman was being transported. However, this process is problematic and, in the experience of Officer Hester, had never worked in the past.

## II. PROCEDURES

Inman was charged with vehicular assault while under the influence and filed a motion to suppress evidence of the warrantless blood draw. He argued that the implied consent statute authorized a warrantless blood draw but that the implied consent statute was not constitutional, so there was no valid authority for the blood draw. He also argued that the exigent circumstances exception to the warrant requirement did not justify a warrantless blood draw in this case. The State did not respond to the statutory issue, but argued that Inman's blood was lawfully drawn pursuant to the exigent circumstances exception to the warrant requirement.

3

The trial court heard testimony from six witnesses, who testified consistently with the factual findings summarized above. The trial court orally ruled that exigent circumstances justified the blood draw and later entered written findings of fact and conclusions of law.

Inman filed a reconsideration motion. He argued that there was no probable cause for DUI. He also argued that, even assuming that exigent circumstances justified the warrantless blood draw, a warrant was needed to test the blood. The State disagreed.

The trial court denied Inman's reconsideration motion and entered findings of fact and conclusions of law related to the denial of Inman's reconsideration motion. The trial court concluded that Deputy Przygocki had probable cause to believe Inman had committed a DUI. In addition, the trial court concluded that clear and convincing evidence supported that the warrantless blood draw was justified under the exigent circumstances exception to the warrant requirement. And the trial court concluded that because the blood was lawfully seized under exigent circumstances, no warrant was required to test the blood. After a stipulated facts trial, the trial court found Inman guilty of vehicular assault. Inman appeals.

## ANALYSIS

### I. SUBSTANTIAL EVIDENCE

Inman assigns error to findings of fact 1, 32, 33, and 35 and states in his issues pertaining to assignments of error that the trial court's findings are not supported by substantial evidence. We do not address this issue.

Appellants must present argument supporting the issues presented for review, citations to legal authority, and references to relevant parts of the record. RAP 10.3(a)(6). We do not consider issues unsupported by arguments and citation to legal authority. *State v. Harris*, 164 Wn. App.

No. 49174-5-II

377, 389 n.7, 263 P.3d 1276 (2011) (citing *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986)).

Inman does not mention substantial evidence in his argument section or provide citations to explain why any of the challenged findings are erroneous. By failing to provide argument and supportive citations, Inman has waived his objections to the challenged findings. *Harris*, 164 Wn. App. at 389 n.7. These findings, consequently, are verities on appeal. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005).[2]

## II. PROBABLE CAUSE TO ARREST FOR DUI

Inman and the State disagree whether the trial court erred when it concluded that Inman's arrest was supported by probable cause. We hold that probable cause supported Inman's arrest.

### A. PRINCIPLES OF LAW

When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Under both the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution, an arrest is lawful only when supported by probable cause. *State v. Gillenwater*, 96 Wn. App. 667, 670, 980 P.2d 318 (1999). Probable cause exists when the arresting officer, at the time of the arrest, has knowledge of facts sufficient to cause a reasonable officer to believe that an offense has been committed. *Gillenwater*, 96 Wn. App. at 670. Whether

---

[2] Alternatively, the trial court's conclusions of law are adequately supported by *unchallenged* findings, as discussed below. As such, we do not address the substantial evidence argument.

probable cause exists depends on the totality of the circumstances. *Gillenwater*, 96 Wn. App. at 670.

A defendant is guilty of DUI if the State proves that the defendant drove a motor vehicle in the State under the influence of intoxicating liquor. Former RCW 46.61.502(1)(c) (2013). Unchallenged findings are verities on appeal. *Gaines*, 154 Wn.2d at 716.

B. PROBABLE CAUSE EXISTED

Inman assigns error to the trial court's conclusion of law that at the time of the warrantless blood draw, Deputy Przygocki had probable cause to believe Inman had committed a DUI.

To have probable cause to arrest Inman for DUI, Deputy Przygocki needed to know facts sufficient to cause a reasonable officer to believe that Inman drove a vehicle in the State under the influence of intoxicating liquor. *Gillenwater*, 96 Wn. App. at 670; former RCW 46.61.502(1)(c) (2013).

Here, the unchallenged findings of fact support the trial court's conclusion that Deputy Przygocki had probable cause to arrest Inman for DUI. When Deputy Przygocki arrived on the scene, he observed a motorcycle in a ditch with significant front-end damage and, after running the license plates, knew the vehicle belonged to Inman. Deputy Przygocki learned from Sergeant Hester that Inman was in the ambulance and smelled of alcohol. Deputy Przygocki then contacted Inman in the ambulance, and Inman admitted he had been driving the motorcycle and that he had been drinking before he drove. Based on these facts, Deputy Przygocki knew that Inman was driving the motorcycle after drinking alcohol when he crashed. This knowledge is sufficient to cause a reasonable officer to believe that Inman was driving a motor vehicle under the influence of alcohol. *Gillenwater*, 96 Wn. App. at 670; former RCW 46.61.502(1)(c).

Inman cites three cases in which courts held that probable cause supported a challenged DUI arrest, but he does not explain how these cases support his argument. Br. of Appellant at 11-12 (citing *Gillenwater*, 96 Wn. App. at 670; *City of College Place v. Staudenmaier*, 110 Wn. App. 841, 43 P.3d 43 (2002); *State v Martines*, 184 Wn.2d 83, 355 P.3d 1111 (2015)).

In *Gillenwater*, probable cause supported the DUI arrest where the defendant and deceased passenger smelled like alcohol, the car contained a cooler full of beer and three open cans, and there was an accident. 96 Wn. App. at 669-71. Here, Inman admitted to drinking alcohol, which is direct evidence of alcohol consumption. And like the defendant in *Gillenwater*, Inman smelled of alcohol and was driving when his vehicle was involved in an accident.

Similarly, in *Staudenmaier*, probable cause supported a DUI arrest where the defendant's breath smelled of alcohol, his eyes were watery and bloodshot, he admitted to drinking beers, and he performed poorly on field sobriety tests. 110 Wn. App at 847. And in *Martines*, law enforcement had probable cause to arrest for DUI when the defendant smelled like alcohol, admitted to drinking one beer, hid empty beer bottles, had bloodshot eyes and a flushed face, and walked in a slow, off-balance manner. 184 Wn.2d at 91-92. Likewise, Inman admitted drinking alcohol, smelled like alcohol, and demonstrated poor physical coordination when he lost control of his motorcycle in an accident involving no other vehicles and no inclement weather.

Contrary to Inman's assertions, these cases actually *support* the conclusion that probable cause supported his DUI arrest. Like the defendants in all three cases, Inman smelled like alcohol at the time of arrest. In addition, like the defendants in *Staudenmaier* and *Martines*, Inman admitted to drinking alcohol shortly before the arrest. And, importantly, like the defendant in *Gillenwater*, Inman was driving when his vehicle was involved in a serious accident. The totality

of the circumstances supports that a reasonable officer could believe that Inman drove under the influence of alcohol. *Gillenwater*, 96 Wn. App. at 670. Accordingly, the trial court did not err when it concluded that probable cause existed to arrest Inman for DUI.

## III. EXIGENT CIRCUMSTANCES

The parties disagree whether the trial court erred when it ruled that the exigent circumstances exception to the warrant requirement authorized the warrantless blood draw. We affirm the trial court's conclusion.

### A. PRINCIPLES OF LAW

A challenged conclusion of law from a suppression hearing is reviewed de novo. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Whether exigent circumstances exist to justify a warrantless blood draw is a legal question we review de novo. *City of Seattle v. Pearson*, 192 Wn. App. 802, 811-12, 369 P.3d 194 (2016). The State bears the burden of showing by clear and convincing evidence that exigent circumstances justified a warrantless search. *Pearson*, 192 Wn. App. at 811.

A warrantless search is impermissible under both article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution, unless an exception to the warrant requirement authorizes the search. *Gaines*, 154 Wn.2d at 716. Drawing a person's blood for alcohol testing is a search triggering these constitutional protections. *Pearson*, 192 Wn. App. at 811 (citing *Missouri v. McNeely*, 569 U.S. 141, 148, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013)).

A warrantless search is allowed if exigent circumstances exist. *Pearson*, 192 Wn. App. at 811 (citing *State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295 (1986)). The exigent

circumstances exception to the warrant requirement applies where "the delay necessary to obtain a warrant is not practical because the delay would permit the destruction of evidence." *State v. Baird*, 187 Wn.2d 210, 218, 386 P.3d 239 (2016) (plurality opinion); *see McNeely*, 569 U.S. at 164.

The natural dissipation of an intoxicating substance in a suspect's blood may be a factor in determining whether exigent circumstances justify a warrantless blood search, but courts determine exigency under the totality of the circumstances on a case-by-case basis. *Baird*, 187 Wn.2d at 220 (citing *McNeely*, 569 U.S. at 150). The State bears the burden of demonstrating that exigent circumstances justified a warrantless search. *Baird*, 187 Wn.2d at 218.

## B. EXIGENT CIRCUMSTANCES EXISTED

The trial court concluded that Inman's blood was lawfully drawn under the exigent circumstances exception to the warrant requirement. This conclusion is supported by the unchallenged findings of fact. Inman and Vanderhoof were both injured from a motorcycle accident that resulted in significant front-end damage to the motorcycle, which was found in a ditch. Both Inman and Vanderhoof received emergency medical services, and Inman was receiving treatment for possible spine injuries. At the time of the blood draw, helicopters were coming to medivac Inman and Vanderhoof to the nearest trauma center. It would have taken at least 45 minutes to prepare and obtain judicial approval for a search warrant. Deputy Przygocki lacked reliable cell phone coverage in the rural area, so obtaining a telephonic warrant may have been a challenge.

Under the circumstances, obtaining a warrant was not practical. *Baird*, 187 Wn.2d at 218. In addition to the natural dissipation of alcohol in the blood, which was one factor contributing to

exigent circumstances, Inman's continued medical treatment could have impacted the efficacy of the blood sample. *See Baird*, 187 Wn.2d at 220. With Inman's imminent transfer to the trauma center, the opportunity to draw Inman's blood may have passed by the time law enforcement obtained a warrant. And the rural location of the accident combined with the lack of reliable cellular phone coverage increased the impracticality of obtaining a warrant for the blood draw.

Inman relies on *Pearson*, but this authority is distinguishable. In *Pearson*, Division One of this court held that exigent circumstances did not exist where the defendant hit a pedestrian and showed signs of intoxication such as poor performance on a field sobriety test. 192 Wn. App. at 807-08, 816-17. The investigating officer personally transported her to the hospital and hours later decided to order a warrantless blood draw. *Pearson*, 192 Wn. App. at 808-09. The court held that it was practical to obtain a warrant under the circumstances such that the exigent circumstances exception did not authorize the blood draw. *Pearson*, 192 Wn. App. at 816-17.

Here, Inman's injuries were more severe than Pearson's, necessitating helicopter transport to the trauma center and requiring Inman to be immobilized on a C-Spine to prevent paralysis. Given the seriousness of the accident, Deputy Przygocki had limited time to interact with Inman and, unlike the officer in *Pearson*, did not personally accompany the defendant to the hospital. As such, unlike the officer in *Pearson* who failed to obtain a warrant during the multiple hours in which he had an opportunity to do so, Deputy Przygocki did not have enough time to obtain a warrant before Inman's transport. In addition, the officer in *Pearson* testified that a telephonic warrant could have been obtained under the circumstances. 192 Wn. App. at 809. In stark contrast, Inman's arresting officer had no reliable means of obtaining a warrant within the time constraints.

10

Thus, here, obtaining a warrant was not practical and would have permitted the destruction of evidence. *Baird*, 187 Wn.2d at 218.

Exigent circumstances supported the warrantless blood draw in this case. *Baird*, 187 Wn.2d at 218. Thus, the trial court did not err in concluding that exigent circumstances existed.

## IV. IMPLIED CONSENT STATUTE IS IRRELEVANT

Inman appears to argue that the blood draw violated the implied consent statute, former RCW 46.20.308(3).

Any motor vehicle operator is deemed to have given consent for warrantless breath or blood alcohol testing if certain conditions are present. Former RCW 46.20.308 (2013).[3]

However, the implied consent statute applies to blood alcohol tests conducted under *only* the implied consent statute and has no effect on blood tests conducted pursuant to other authority. *See City of Seattle v. St. John*, 166 Wn.2d 941, 946-47, 215 P.3d 194 (2009).

Here, the trial court properly held that the blood draw and subsequent testing were authorized under the exigent circumstances exception to the search warrant requirement, and it did not address the implied consent statute. As such, its requirements are not relevant here.

## V. NO WARRANT NECESSARY TO TEST BLOOD

Inman asserts that, even if exigent circumstances authorized the warrantless blood draw, the trial court erred when it concluded that no warrant was required to test Inman's blood legally seized under exigent circumstances. The State argues that no search warrant is required to test blood that law enforcement obtains under exigent circumstances. We agree with the State.

---

[3] In 2015, RCW 46.20.308 was revised effective September 26, 2015. We consider the statutory language that was in effect at the time of Inman's arrest.

### A. PRINCIPLES OF LAW

We review de novo the trial court's legal conclusion that because Inman's blood was lawfully seized under exigent circumstances, no warrant was required to test the blood for intoxicants. *Pearson*, 192 Wn. App. at 811-12.

"[A] warrant authorizing extraction of a blood sample necessarily authorizes testing of that sample for evidence of the suspected crime." *Martines*, 184 Wn.2d at 94. The purpose of a warrant authorizing a blood draw is to identify intoxication evidence, and such evidence is only accessible through blood testing. *Martines*, 184 Wn.2d at 93. A warrant authorizing extraction of blood in a DUI case thus impliedly authorizes testing the blood. *Martines*, 184 Wn.2d at 93-94.

### B. NO WARRANT REQUIRED

Inman relies on three cases to argue that a warrant was required to test Inman's blood, but none of his cited cases are applicable. First, Inman discusses the reasoning in *State v. Martines*, 182 Wn. App. 519, 331 P.3d 105 (2014), *rev'd*, 184 Wn.2d 83. Inman acknowledges that the Court of Appeals was reversed.

But under the Supreme Court's reasoning in *Martines,* 184 Wn.2d at 93-94, and by analogy, Inman's blood was properly tested without a warrant. Just as the blood in *Martines* was lawfully seized under a search warrant, Inman's blood was lawfully seized under the exigent circumstances exception to the warrant requirement. *See Martines*, 184 Wn.2d at 93-94. Similarly, just as Martines's blood test was impliedly authorized by the search warrant because the purpose of the blood extraction was to test for intoxicants, Inman's blood test was similarly authorized when the blood was obtained under a lawful exercise of the exigent circumstances exception. *See Martines*, 184 Wn.2d at 93-94.

Second, Inman relies on *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). In *Birchfield*, the United States Supreme Court held that a warrantless blood draw cannot be justified under the search incident to arrest exception to the warrant requirement. 136 S. Ct. at 2178. The Court held that a blood test is "significantly more intrusive" than a breathalyzer test and that blood tests raise special privacy concerns. *Birchfield*, 136 S. Ct. at 2178. As the State asserts, *Birchfield* does not apply here. *Birchfield* holds that it is *unlawful* to seize blood incident to arrest. It fails to address whether blood, *lawfully* seized under exigent circumstances, can be tested without a warrant.

Third, Inman argues that *Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 2494, 189 L. Ed. 2d 430 (2014), requires law enforcement to obtain a warrant to search blood lawfully obtained under exigent circumstances. In *Riley*, the United States Supreme Court held that when law enforcement obtains a person's cellular phone during a search incident to arrest, law enforcement needs a warrant to search the phone. 134 S. Ct. at 2481, 2495. But the Court explicitly limited this holding to cell phones seized during *searches incident to arrest* and stated that warrantless searches of cellular phones could still occur lawfully under exigent circumstances. *Riley*, 134 S. Ct. at 2494. Because *Riley* applies to only searches incident to arrest, it is inapplicable here.

We hold that the trial court did not err when it concluded that Inman's blood could be tested without a warrant.

VI. CONCLUSION

The trial court did not err in denying Inman's suppression motion. First, there was probable cause to arrest Inman for DUI. Second, exigent circumstances existed to authorize a warrantless blood draw. Third, the implied consent statute does not bar a warrantless search under exigent

No. 49174-5-II

circumstances. Finally, a legal blood draw under the exigent circumstances exception allows testing of the blood without a warrant when there is probable cause to arrest for DUI.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

SUTTON, J.