IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 76869-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| LYDELL COLEMAN, | |
| Appellant. | FILED: January 28, 2019 |

ANDRUS, J. — A jury convicted Lydell Coleman of indecent exposure and theft in the third degree. He contends that the trial court did not properly instruct the jury on the elements of indecent exposure. We disagree and affirm.

## FACTS

On the evening of February 5, 2017, Lydell Coleman went into the West Seattle Target store. William King, a Target uniformed security officer, received a report that Coleman was harassing other customers. He approached Coleman and asked him to leave other customers alone. Coleman agreed. King decided to watch Coleman's actions on Target's video surveillance system. He notified his supervisor, Adam Eccles, who then began to observe Coleman on the floor of the store. King saw Coleman pick up and don a backpack from the sporting goods section. King also saw Coleman open and drink an energy drink, throw the empty can on the floor, and open a package of women's socks to put onto his feet. Eccles saw Coleman putting items into the backpack. He overheard Coleman saying

something like "Nope, don't want that one; nope, don't want that; yep, I want that one," and then saw Coleman put it into the backpack. Eccles and King watched Coleman from the floor of the store and from the surveillance room for more than 15 minutes before they saw him head toward the front store doors. As Coleman walked past the cashier area, he picked a bikini from a rack and tossed it high into the air.

Eccles and King intercepted Coleman in the front vestibule. Eccles said "Stop, Target Security." At that point, Coleman shed the backpack and walked away from it. Coleman denied doing anything wrong and demanded to know why he was being detained. Eccles attempted to de-escalate the situation and reassured Coleman that it was not a big deal, but they needed to fill out trespass paperwork because he was shoplifting.

Eccles picked up the backpack, and he and King escorted Coleman back into the store toward the security office. As they walked, Eccles asked Coleman his name. Coleman responded loudly, "Everybody knows me. My name is Lydell. Big Dick Lydell." At that point, Coleman lifted his shirt and pulled down the waist of his sweatpants, exposing his penis and testicles.

Because Coleman was so loud, he drew the attention of several other Target employees. Thu Nguyen, a Target cashier, heard Coleman say that he had a big dick and saw him expose his penis. Matthew Bozek, another cashier, also heard the "big dick" comment and saw Coleman expose his penis. Eccles testified Coleman's conduct was offensive. Nguyen testified Coleman's behavior scared her. Bozek found Coleman's conduct revolting.

2

After a few seconds, Eccles convinced Coleman to pull his pants up. Eccles and King got Coleman into their office and contacted 911.

King and Eccles confirmed that the backpack and items they found inside had been taken by Coleman without permission. The items—which included the backpack, an energy drink, a toothbrush, Axe body spray, a pair of gloves and socks—totaled $70.

Several witnesses testified that Coleman's conduct was erratic or bizarre, and they assumed he was high or intoxicated. Coleman told Eccles he had used drugs that day. King told the 911 dispatcher that he was unsure if Coleman was under the influence. The arresting police officer, Jonathan Matthews, also testified that he seemed high on a stimulant. Coleman was fidgeting, could not sit still, was talking loudly, and had difficulty responding to the police officer's questions. Officer Matthews found a crack pipe on Coleman's person and booked it into evidence.

The State charged Coleman with misdemeanor indecent exposure and third degree theft. The jury convicted Coleman as charged. Coleman seeks to reverse the indecent exposure conviction based on what he contends were erroneous instructions. Coleman does not challenge his theft conviction.

## ANALYSIS

Coleman raises two instructional issues on appeal. First, he contends he was entitled to an instruction defining the word "obscene" as requiring action taken for a sexual purpose. Second, he argues the jury was not adequately instructed on how to determine whether Coleman "knew" his conduct was likely to cause reasonable affront or alarm.

3

The trial court rejected Coleman's proposed "obscene exposure" instruction as an incorrect statement of the law. The trial court rejected Coleman's proposed "knowledge" instruction as a deviation from the standard Washington Pattern Jury Instruction (WPIC). This court reviews de novo the trial court's refusal to give an instruction based on a ruling of law. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

## A. Definition of Obscene Exposure

Under RCW 9A.88.010(1), a person is guilty of indecent exposure "if he or she intentionally makes any open and obscene exposure of his . . . person . . . knowing that such conduct is likely to cause reasonable affront or alarm." The word "obscene" is not defined by statute. Coleman proposed the following instruction at trial: "'Obscene exposure' means the exposure of the sexual or intimate parts of one's body for a sexual purpose." Coleman relies on State v. Galbreath to argue that "obscene exposure" means an act done for a sexual purpose. 69 Wn.2d 664, 668, 419 P.2d 800 (1966). But the Supreme Court rejected this argument in State v. Murray, reasoning that the crime of indecent exposure in RCW 9A.88.010 does not require that the act be committed with sexual motive. 190 Wn.2d 727, 735-36, 416 P.3d 1225 (2018). Accordingly, the trial court did not err in rejecting Coleman's proposed "obscene exposure" instruction.

## B. Knowledge Instruction

Next, Coleman argues that the trial court erred in refusing his supplemental instruction defining the "knowledge" element of indecent exposure. The trial court instructed the jury as follows:

A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

This instruction was taken verbatim from WPIC 10.02.[1] At trial, Coleman conceded this instruction was a correct statement of law.

On appeal, however, he argues that the trial court erred in refusing to give his proposed supplemental instruction to clarify that the jury had to find "actual knowledge" and could not base a conviction on constructive knowledge. He proposed:

A person may be aware of information that would lead a reasonable person to know that a fact, circumstance or result exists. Such a person has constructive knowledge of a fact, circumstance or result. Where a person is aware that a fact, circumstance or result exists, the law deems them to have actual knowledge of that fact, circumstance or result.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury may only find that the person acted with knowledge of that fact if based on the evidence the jury is satisfied beyond a reasonable doubt that the person had actual knowledge of that fact.

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (4th ed. 2016) (WPIC).

Coleman relies on State v. Allen to argue that the WPIC is ambiguous and his proposed instruction was necessary to clarify the law. 182 Wn.2d 364, 341 P.3d 268 (2015). We disagree.

In Allen, the State charged the defendant as an accomplice with aggravated murder in the first degree. Id. at 369-70. The State had the burden of proving accomplice liability and that the defendant had "actual knowledge" of the crime. Id. at 371. The trial court instructed the jury on knowledge using WPIC 10.02. Id. at 372. Contrary to the jury instruction that correctly defined the meaning of knowledge, in closing argument, the prosecutor "repeatedly and improperly" told the jury that the standard was whether the defendant "should have known." Id. at 371-72. The misstatement of the law was exacerbated by the prosecutor displaying a slide in closing that had the word "Know" crossed out and the words "Should Have Known" displayed prominently. Id. at 377.

Our Supreme Court held the prosecutor's argument was improper and misleading because jurors could misinterpret the culpability statute and convict the defendant based on what he should have known, rather than what he actually knew:

> We have recognized that a juror could understandably misinterpret Washington's culpability statute to allow a finding of knowledge "if an ordinary person in the defendant's situation would have known" the fact in question, or in other words, if the defendant "should have known."

Id. at 374 (quoting State v. Shipp, 93 Wn.2d 510, 514, 610 P.2d 1322 (1980)). The Allen Court noted, however, that while the jury was not allowed to base its accomplice liability conviction on an unconstitutional constructive knowledge standard, it could find actual knowledge based on circumstantial evidence. Id.

6

Here, Coleman has not argued that the prosecutor misled the jury in explaining the knowledge standard to the jury. Coleman objected when the prosecutor argued that "knowledge isn't dependent all on whether or not the Defendant knew." The trial court sustained this objection. The prosecutor then restated the correct legal standard and clarified that the evidence showed Coleman actually knew that his conduct would cause reasonable affront or alarm:

> Ladies and gentlemen, Jury Instruction No. 15 tells you that if a person has information that would lead a reasonable person in the same situation to believe that a fact exists, then you are permitted to find that there was knowledge.
>
> Well, . . . here the conduct, in and of itself, is knowledge that it would cause reasonable affront or alarm, the knowledge that when you announce yourself as "Big Dick Lydell" and you expose your genitalia to multiple people standing just a mere feet from you, that you would know that that would cause reasonable affront or alarm.

It was within the evidence for the State to argue that by yelling loudly to attract attention to himself, and by pulling his pants down while screaming, it was reasonable for the jury to infer that Coleman had actual knowledge his conduct was likely to cause affront and alarm.

Coleman argues that the trial court should have given his proposed instruction because it supported his theory of the case. We review a trial court's decision to reject a party's jury instruction for abuse of discretion. State v. Picard, 90 Wn. App. 890, 902, 954 P.2d 336 (1998); see also City of Seattle v. Pearson, 192 Wn. App. 802, 820 n.10, 369 P.3d 194 (2016). While each party is entitled to have their theory of the case set forth in the court's instructions, the trial court has considerable discretion in determining the wording of the instructions and which instructions to include. Pearson, 192 Wn. App. at 820-21. The trial court is not

7

required to include an instruction, even if that instruction is legally accurate, as long as the instructions given were sufficient to inform the jury of the applicable law and allowed Coleman to argue his theory of the case. Id. at 821-22.

Coleman's defense was that he was too intoxicated to know his conduct was likely to offend or scare employees and customers in the Target store. He requested and the trial court gave a voluntary intoxication instruction. Instruction 16 stated, "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted with knowledge or intent." Coleman was thus able to argue his theory of the case without his proposed knowledge instruction.

We conclude the trial court did not err in refusing to give Coleman's proposed jury instruction or in instructing the jury on the definition of "knowledge" using WPIC 10.02.

Accordingly, we affirm Coleman's conviction for indecent exposure.

Andrus, J.

WE CONCUR:

Mann, ACJ

8