# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76672-4-I |
| Respondent, | ) ) | |
| | ) | (Consolidated with |
| v. | ) | No. 78070-1-I) |
| | ) | |
| NICHOLAS WINDSOR ANDERSON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 5, 2019 |
| | ) | |

LEACH, J. — Nicholas Anderson appeals his judgment and sentence for multiple offenses arising from a car crash. He also appeals a restitution order requiring that he pay almost $90,000 for a passenger's medical expenses. He challenges the constitutionality of a warrantless blood draw, raises two sentencing issues, clams ineffective assistance of counsel based on his counsel's failure to object to the restitution order, and challenges the imposition of a $100 DNA (deoxyribonucleic acid) fee.

Anderson establishes two errors. A jury must decide whether his prior reckless driving conviction qualifies as a "prior offense" under RCW 46.61.5055. That did not happen here. And State v. Ramirez[1] requires striking Anderson's

---

[1] 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018).

$100 DNA fee. So we remand for the superior court to empanel a jury to decide the prior offense issue and to strike the DNA fee.

## FACTS

In October 2014, Anderson was living with his high school friend, Michael Powers. Powers would occasionally let Anderson drive his car. The evening of October 24, 2014, Anderson drank at home and then went to a bar to watch a hockey game. About 12:30 a.m., Powers heard Anderson's voice and then heard his car start. Anderson took Powers's car without his permission.

Around 2:00 a.m., Sergeant Jamie Douglas responded to a multivictim car crash in Auburn. At the scene, Douglas saw an "obliterated" car off the roadway, a path of debris, an uprooted tree with an 18-inch base, uprooted utility boxes, and guy wires that had been supporting a telephone pole torn out of the ground. The speed limit on the road was 35 m.p.h. but, based on the scene, Douglas estimated the car was traveling close to 100 m.p.h. Deputy Jace Hoch had observed the car earlier traveling at about 90 m.p.h. but could not catch it. He asked dispatch to let the Auburn Police Department know that the car was heading toward Auburn.

Four of the five passengers in the car, Andrew Tedford, Caleb Graham, Rehlein Stone, and Suzanne McCay, died. They suffered extensive injuries, including amputations and dissected and evulsed organs. Multiple occupants

were ejected from the vehicle. The fifth passenger, James Vaccaro, also suffered serious injuries, including traumatic brain injury, that have had lasting effects. Anderson's injuries included lacerations to his face, liver, and kidney, a collapsed lung, four rib fractures, a wrist fracture, and bleeding around his adrenal gland. Officer Derek Anderson, a collision investigation officer, responded to the scene and testified, "The scale and the amount of damage and unfortunate loss of life in this case has been unparalleled in my . . . eight years of [investigating collision] scenes."

At the scene, Officer Josh Gustafson asked Anderson who had been driving the car. Anderson said that he had. Anderson told Sergeant Douglas that he did not "make the turn." Saliva found on the driver's side airbag matched Anderson's DNA.

Multiple individuals who responded to the scene smelled alcohol on Anderson. Anderson told paramedic Paul Nordenger that he had had "a few drinks." Nordenger drew Anderson's blood at the scene without a warrant. Test results showed that his blood alcohol content (BAC) was 0.19 grams of alcohol per 100 milliliters of blood and that he had 2.0 nanograms of THC (tetrahydrocannabinol) per milliliter. Anderson was taken to Harborview Medical Center. Toxicologist Asa Louis testified that a second blood draw taken there showed a BAC of 0.18.

-3-

The State charged Anderson with four counts of vehicular homicide, one count of vehicular assault, one count of reckless driving, and an aggravator for injury to the victim "substantially exceeding the level of bodily harm necessary to satisfy the elements of [vehicular assault]." A jury convicted Anderson as charged.

The sentencing court imposed concurrent sentences of 280 months for each of the four vehicular homicide convictions. It also imposed two 24-month enhancements to run consecutively to each of the vehicular homicide convictions and to each other (192 months total) because Anderson had two prior convictions for driving under the influence (DUI) and reckless driving. And it imposed 120 months for the vehicular assault conviction and 364 days for the reckless driving conviction to run consecutively to the vehicular homicide convictions and the enhancements. The court sentenced Anderson to a total of 592 months in prison and 364 days in jail. It waived all nonmandatory legal financial obligations (LFOs) and imposed a $100 DNA fee. The court also ordered Anderson to pay $97,996.48 in restitution for Tedford's and Stone's funeral expenses and for Vaccaro's medical expenses. Anderson appeals.

ANALYSIS

I. The Constitutionality of the First Warrantless Blood Draw

Anderson challenges the constitutionality of the warrantless blood draw at the scene, claiming that exigent circumstances did not exist. He does not challenge the second blood draw at Harborview. We reject his claim.

"As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment and article I, section 7 of the Washington State Constitution."[2] A blood test is a search and seizure.[3] A recognized exception to the warrant requirement allows a warrantless search or seizure when exigent circumstances exist.[4] A court examines the totality of the circumstances to determine whether they exist.[5] They exist where "the delay necessary to obtain a warrant is not practical because the delay would permit the destruction of evidence."[6] The natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, for example, when delay results from the warrant application process.[7] The State has the burden of showing

---

[2] State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).
[3] State v. Curran, 116 Wn.2d 174, 184, 804 P.2d 558 (1991).
[4] Missouri v. McNeely, 569 U.S. 141, 148-49, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).
[5] McNeely, 569 U.S. at 149.
[6] State v. Baird, 187 Wn.2d 210, 218, 386 P.3d 239 (2016).
[7] McNeely, 569 U.S. at 156.

exigent circumstances by clear and convincing evidence.[8]  Whether exigent

circumstances exist is a legal question this court reviews de novo.[9]

Anderson cites City of Seattle v. Pearson[10] to support that here, no

exigent circumstances existed.   There, police arrested Pearson for DUI and

vehicular assault after she struck a pedestrian with her car, performed poorly on

field sobriety tests, and admitted that she had smoked marijuana earlier in the

day.[11]  Police transported her to the hospital two hours after the incident.[12]  About

thirty minutes after Pearson's arrival, a nurse drew her blood without a warrant.[13]

This blood draw showed her THC concentration was approximately 20

nanograms.[14]  Pearson asked the court to suppress this evidence.[15]  The trial

court admitted it, finding that exigent circumstances existed to justify the

warrantless blood draw.[16]

This court reversed, holding, "Because the City failed to show by clear and

convincing evidence that obtaining a warrant would have significantly delayed

collecting a blood sample, the natural dissipation of THC in Pearson's

---

[8] State v. Inman, 2 Wn. App. 2d 281, 290, 409 P.3d 1138, review denied, 190 Wn.2d 1022 (2018).
[9] Inman, 2 Wn. App. 2d at 290.
[10] 192 Wn. App. 802, 369 P.3d 194 (2016).
[11] Pearson, 192 Wn. App. at 807-08.
[12] Pearson, 192 Wn. App. at 808.
[13] Pearson, 192 Wn. App. at 808-09.
[14] Pearson, 192 Wn. App. at 809.
[15] Pearson, 192 Wn. App. at 809.
[16] Pearson, 192 Wn. App. at 809.

bloodstream alone did not constitute an exigency sufficient to bypass the warrant requirement."[17] In its analysis of the totality of the circumstances, this court noted an officer's testimony that a warrant usually takes between 60 and 90 minutes, municipal, district, and superior court judges are available to sign warrants, and police can secure warrants by telephone.[18] A toxicologist testified that unless a person is a chronic marijuana user, THC generally dissipates from a person's blood stream within 3 to 5 hours after smoking.[19] And this court observed that in Missouri v. McNeely,[20] the Supreme Court of the United States explained that the presence of other officers weighs against the conclusion that exigent circumstances existed.[21] This court reasoned that because there were nine officers at the scene, one officer could have transported Pearson to the hospital to collect a blood sample while another officer obtained a warrant, so "[t]he delay—if any—would have been minimal."[22]

The State relies on State v. Inman[23] to show that exigent circumstances existed. In Inman, Inman crashed his motorcycle on a rural road, injuring him

---

[17] Pearson, 192 Wn. App. at 816.

[18] Pearson, 192 Wn. App. at 814.

[19] Pearson, 192 Wn. App. at 814-15.

[20] 569 U.S. 141, 153-54, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).

[21] Pearson, 192 Wn. App. at 816.

[22] Pearson, 192 Wn. App. at 816.

[23] 2 Wn. App. 2d 281, 409 P.3d 1138, review denied, 190 Wn.2d 1022 (2018).

and his passenger.[24] "Inman had facial trauma, including bleeding and abrasions on the face, and a deformed helmet."[25] A bystander told police that Inman had been unconscious for five minutes before regaining consciousness.[26] A paramedic administered emergency treatment.[27] A responding officer spoke with Inman and smelled intoxicants on him.[28] Inman admitted that he had been drinking before driving his motorcycle. Responders at the scene conducted a warrantless blood draw.[29] The State charged Inman with vehicular assault.[30] Inman asked the trial court to suppress evidence of the blood draw,[31] which the court declined to do, finding exigent circumstances existed.[32]

Division Two of this court affirmed the trial court's decision and held that the totality of the circumstances supported that exigent circumstances existed.[33] The court considered that Inman received emergency medical services and treatment for possible spine injuries, helicopters were coming to medevac him to the nearest trauma center at the time of the blood draw, it would have taken at least 45 minutes to prepare and obtain a warrant, and obtaining a warrant by

---

[24] Inman, 2 Wn. App. 2d at 284.
[25] Inman, 2 Wn. App. 2d at 284.
[26] Inman, 2 Wn. App. 2d at 284.
[27] Inman, 2 Wn. App. 2d at 284.
[28] Inman, 2 Wn. App. 2d at 284.
[29] Inman, 2 Wn. App. 2d at 285.
[30] Inman, 2 Wn. App. 2d at 285.
[31] Inman, 2 Wn. App. 2d at 285.
[32] Inman, 2 Wn. App. 2d at 286.
[33] Inman, 2 Wn. App. 2d at 291.

telephone was questionable because the responding officer lacked reliable cell phone coverage in the rural area.[34] The court stated that "[u]nder the circumstances, obtaining a warrant was not practical" because of delay and because Inman's continued medical treatment could have impacted the integrity of the blood sample.[35] The court distinguished these circumstances from those in Pearson based on the severity of injuries involved, the necessity for the administration of medication and transportation, the time available to obtain a warrant before transport, and the accessibility of a telephonic warrant.[36]

The circumstances here are more like those in Inman. In the trial court's order denying Anderson's request to suppress the blood draw results, the court made a number of undisputed findings that are relevant here.[37] Similar to Inman, the trial court found that Anderson was in a high-impact collision resulting in serious injuries. Although Anderson was able to respond to Douglas's questions at the scene, make eye contact, and walk to the medic station with a firefighter supporting him on either side, he also had serious injuries that required treatment. These included lacerations to his face and organs, fractures, a collapsed lung, and bleeding around his adrenal gland.

---

[34] Inman, 2 Wn. App. 2d at 291-92.
[35] Inman, 2 Wn. App. 2d at 292.
[36] Inman, 2 Wn. App. 2d at 292-93.
[37] This court accepts unchallenged findings as true on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

In addition, multiple responders smelled alcohol on Anderson, Anderson told Gustafson that he had been driving, and he told Gustafson that he had been drinking before driving. And paramedic Nordenger told first responding officer Douglas that the medics would be giving Anderson medication and intubating him. Douglas knew from his experience in law enforcement and as a paramedic that this emergency medical treatment could impair the integrity of the blood sample. He estimated that it would take 40 to 90 minutes to obtain a warrant for blood. At 2:10 a.m., 10 minutes after arriving to the scene, Douglas ordered a warrantless blood draw, which medics conducted at 2:14 a.m. Gustafson followed the medic vehicle to the hospital.

Anderson contends that similar to Pearson, there were multiple officers at the scene and it was possible to obtain a telephonic warrant, so no exigent circumstances existed. Although a warrant was more readily available here than it was in Inman because the location of the crash was not remote, the carnage at the scene and Anderson's injuries were more severe. And, unlike in Pearson, officers did not wait an extended period to transfer Anderson to the hospital. Officers were also unable to interact significantly with Anderson before or during transportation to the hospital as a result of his immediate need for medical attention. Similar to Inman, the trial court's uncontested finding states that medical treatment could have impacted the reliability of the blood draw results. A

warrant was not practical because the delay caused by obtaining a warrant would result in the destruction of evidence or postpone Anderson's receipt of necessary medical care. The totality of the circumstances establish that exigent circumstances existed to justify a warrantless blood draw.

## II. Anderson's Prior Reckless Driving Conviction

Next, Anderson challenges the trial court judge's decision that his 2005 reckless driving conviction was a "prior offense" under RCW 46.61.5055. He contends that whether his reckless driving conviction qualifies as a "prior offense" presents a fact question that a jury must resolve, while the State asserts that it is a threshold question of law for the judge. We agree with Anderson.

Whether an issue presents a question of law or fact is a question of law that this court reviews de novo.[38]

Two United States Supreme Court decisions control this issue. In Apprendi v. New Jersey,[39] the Supreme Court held that the constitutional rights to due process and a jury entitle a defendant to have any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum be submitted to a jury and proved beyond a reasonable doubt. In Blakely v. Washington,[40] the Supreme Court held that the statutory

---

[38] State v. Mullen, 186 Wn. App. 321, 328, 345 P.3d 26 (2015).
[39] 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).
[40] 542 U.S. 296, 303-05, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

maximum sentence described in <u>Apprendi</u> is the maximum sentence the judge may impose without any finding of additional facts beyond those reflected in the jury's verdict. So we must decide whether the trial court relied on any fact not reflected in the jury's verdict to determine that Anderson's earlier reckless driving conviction qualified as a prior conviction that required a sentencing enhancement.

RCW 9.94A.533(7) states, "An additional two years shall be added to the standard sentence range for vehicular homicide committed while under the influence of intoxicating liquor or any drug . . . for each prior offense as defined in RCW 46.61.5055." RCW 46.61.5055 defines "prior offense" as "[a] conviction for a violation of RCW . . . 46.61.500 [reckless driving] . . . if the conviction is the result of a charge that was originally filed as a violation of RCW 46.61.502 [DUI]."[41] This statute thus defines what earlier convictions are prior offenses that increase mandatory minimum sentences for certain driving convictions. Here, Anderson pleaded guilty to reckless driving in 2005. The State claims Anderson was originally charged with DUI. The sentencing court agreed and considered the 2005 reckless driving conviction to be a prior offense and imposed a 24-month enhancement for it to run consecutively to each of the four vehicular homicide convictions and to another prior offense enhancement.

---

[41] RCW 46.61.5055(14)(a)(xii).

-12-

The parties agree that the jury was not asked to decide if the challenged reckless driving conviction involved alcohol or drugs or whether it was originally charged as a DUI.

Anderson relies on State v. Mullen[42] to support that a jury must make a factual finding to determine whether a reckless driving conviction is a qualifying prior offense.  In Mullen, the State charged Mullen with felony DUI based, in part, on its claim that a prior reckless driving conviction was a "prior offense" under RCW 46.61.5055.[43]  Division Two of this court held that the trial court violated due process when it declined to give Mullen's proposed jury instruction requiring that the State prove beyond a reasonable doubt that alcohol or drugs were involved in his prior reckless driving conviction.[44]  The court reasoned that because the involvement of alcohol or drugs in the prior conviction is an essential element of felony DUI but not reckless driving, the State must prove to a jury whether the reckless driving conviction involved alcohol or drugs.[45]

A panel of this court disagreed with Mullen in State v. Bird[46] and in State v. Wu.[47]  In Bird, Bird's DUI charge was elevated to a felony under a different

---

[42] 186 Wn. App. 321, 324, 345 P.3d 26 (2015).
[43] Mullen, 186 Wn. App. at 324.
[44] Mullen, 186 Wn. App. at 329.
[45] Mullen, 186 Wn. App. at 329.
[46] 187 Wn. App. 942, 352 P.3d 215 (2015).
[47] 6 Wn. App. 2d 679, 431 P.3d 1070 (2018), review granted, 193 Wn.2d 1002 (2019).

subsection of the prior offense statute based on a prior vehicular assault conviction.[48] This court relied on its opinion in State v. Chambers[49] to support the proposition that "[w]hether a prior conviction qualifies as a predicate offense is a threshold question of law for the court, and not an essential element of the crime of felony DUI."[50] In doing so, it stated,

> We disagree with Division Two's recent opinion, State v. Mullen, 186 Wn. App. 321, 345 P.3d 26 (2015), holding otherwise.
>
> In Mullen, a divided court held that the trial court erred in not instructing a jury that the State was required to prove beyond a reasonable doubt that alcohol or drugs were involved in the prior conviction for reckless driving. But the issue of whether that conviction qualifies is a question of law, not fact.[51]

This court held that because Bird's statement on his guilty plea and the incorporated police reports proved that the vehicular assault conviction involved alcohol, sufficient information existed to allow the trial court to determine that the guilty plea was based on the DUI prong of vehicular assault and that it served as a predicate offense, elevating the DUI to a felony.[52]

Similarly, in Wu, this court held that it was a threshold question of law for the trial court to determine if Wu's prior convictions for reckless driving involved intoxicating alcohol or drugs and were thus qualifying prior offenses elevating his

---

[48] Bird, 187 Wn. App. at 943.
[49] 157 Wn. App. 465, 479, 237 P.3d 352 (2010).
[50] Bird, 187 Wn. App. at 945.
[51] Bird, 187 Wn. App. at 945.
[52] Bird, 187 Wn. App. at 946-47.

DUI to a felony.[53] But in Judge Mary Kay Becker's dissenting opinion, she noted the critical distinction between a "prior conviction" and a "prior offense."[54] She stated that Bird was correct in stating that whether a prior conviction qualifies as a predicate offense is a threshold question of law for the court; she asserts, however, that Bird inaccurately criticized Mullen because Bird involved

> a prior conviction for enhancement without any other facts. [And w]hat Mullen holds is that a prior conviction for reckless driving qualifies as a "prior offense" for enhancement purposes only when it is accompanied by the additional aggravating fact that it was for a violation initially filed as a DUI.[55]

We hold, consistent with Apprendi, Mullen, and Judge Becker's dissent in Wu, whether Anderson's reckless driving conviction qualifies as a prior offense requires a factual finding that a jury must make because the enhancement cannot apply based only on the fact of the reckless driving conviction. Due process thus requires remand so the court may empanel a jury to make this determination.

## III. Fact Question for the Jury on Remand[56]

Anderson contends that the State must prove to a jury whether drugs or alcohol were involved while the State asserts it must prove that the reckless

---

[53] Wu, 6 Wn. App. 2d at 681, 688.
[54] Wu, 6 Wn. App. 2d at 695 (Becker, J. dissenting).
[55] Wu, 6 Wn. App. 2d at 697 (Becker, J. dissenting).
[56] This section of the opinion reflects the conclusion of only one member of the panel. For the majority opinion on the issue of the fact question for the jury on remand, please see the concurrence.

driving offense was originally charged as a DUI. Both parties rely on City of Walla Walla v. Greene.[57] The State's interpretation is consistent with our Supreme Court's holding in Greene. There, our Supreme Court reviewed a constitutional challenge to the prior offense statute based on a prior conviction for negligent driving. It expressly overruled this court's holding in State v. Shaffer.[58] In Shaffer, this court held that the mandatory sentencing enhancement for vehicular homicide based on a prior reckless driving conviction was unconstitutional because it was based on an unproved allegation of DUI that resulted in the reckless driving conviction.[59]

Our Supreme Court in Greene quoted this court's citation of the statutory definition under former RCW 9.94A.310(7) (2000) in Shaffer as follows: "'An additional two years shall be added to the standard sentence range for vehicular homicide committed while under the influence of intoxicating liquor or any drug . . . for each prior offense [of driving under the influence].'"[60] Our Supreme Court explained that this court erred by adding the emphasized language because the statutory list of prior offenses contains more than a DUI conviction; it lists other specific convictions that constitute a prior offense but limits the

_____

[57] 154 Wn.2d 722, 116 P.3d 1008 (2005).
[58] 113 Wn. App. 812, 55 P.3d 668 (2002); Greene, 154 Wn.2d at 724, 728.
[59] Shaffer, 113 Wn. App. at 819, 822.
[60] Greene, 154 Wn.2d at 727 (alterations in original) (internal quotation marks omitted) (quoting Shaffer, 113 Wn. App. at 816).

application of the statute to those convictions originally charged as a DUI.[61] The court reasoned, "[T]he fact that [Greene] was convicted of first degree negligent driving is sufficient to satisfy her due process protections because all elements of that offense are established by virtue of the conviction itself."[62] It also stated, "[D]ue process is satisfied for the purposes of this mandatory enhancement if the prior conviction exists and the prosecution can establish that intoxicating liquor or drugs were involved in that prior offense."[63] But this dicta is neither consistent with Greene's overruling of Shaffer nor with the prior offense statute. A requirement that the State prove the involvement of alcohol or drugs instead of the fact that the conviction was first charged as a DUI adds language to the statute in the way that our Supreme Court found unacceptable in overruling Shaffer. And the prior offense statute defines "reckless driving" as a "prior offense" if the conviction is the result of a charge originally filed as a DUI. Consistent with this language, the State need prove only that the prior reckless driving conviction was originally charged as a DUI.

---

[61] Greene, 154 Wn.2d at 727.
[62] Greene, 154 Wn.2d at 728.
[63] Greene, 154 Wn.2d at 728.

## IV. Consecutive Sentencing Enhancements

Anderson contends that the trial court exceeded its statutory authority by running consecutively to each other his two 24-month sentencing enhancements on each of the base sentences for vehicular homicide. We disagree.

This court reviews questions of statutory interpretation de novo.[64] In construing a statute, a reviewing court seeks to determine and carry out the legislature's intent.[65] This court determines legislative intent from the statute's plain language, "'considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole.'"[66] A statute is ambiguous if it is susceptible to more than one reasonable interpretation; only then does this court use statutory construction, legislative history, and relevant case law to help discern legislative intent.[67] The rule of lenity requires that a court interpret an ambiguous statute in the defendant's favor absent legislative intent to the contrary.[68]

---

[64] State v. Conover, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015).
[65] Conover, 183 Wn.2d at 711.
[66] Conover, 183 Wn.2d at 711 (quoting Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wn.2d 342, 350, 340 P.3d 849 (2015)).
[67] State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).
[68] Conover, 183 Wn.2d at 712.

-18-

The vehicular homicide statute provides, "Vehicular homicide is a class A felony punishable under chapter 9A.20 RCW, except that, for a conviction under subsection (1)(a) of this section [the DUI prong], an additional two years shall be added to the sentence for each prior offense as defined in RCW 46.61.5055."[69] RCW 9.94A.533(7) describes how a court must apply a prior offense enhancement to a sentence for vehicular homicide. When a court imposes a sentence under Washington's Sentencing Reform Act of 1981,[70] it must do so in accordance with the statutes in effect at the time the defendant committed the offense.[71] At the time of Anderson's offense, former RCW 9.94A.533(7) (2013) stated,

> An additional two years shall be added to the standard sentence range for vehicular homicide committed while under the influence of intoxicating liquor or any drug as defined by RCW 46.61.502 for each prior offense as defined in RCW 46.61.5055. All enhancements under this subsection shall be mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions.

(Emphasis added.)

In 2016, the legislature amended subsection (7) to read, in relevant part,

> An additional two years shall be added to the standard sentence range for vehicular homicide committed while under the influence of

---

[69] RCW 46.61.520(2).
[70] Ch. 9.94A RCW.
[71] RCW 9.94A.345.

-19-

intoxicating liquor or any drug as defined by RCW 46.61.502 for each prior offense as defined in RCW 46.61.5055.

Notwithstanding any other provision of law, all impaired driving enhancements under this subsection are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other impaired driving enhancements, for all offenses sentenced under this chapter.[72]

(Emphasis added.)

Anderson asserts that the statute in effect at the time that he committed vehicular homicide was ambiguous. He cites State v. Conover[73] to support this assertion. In Conover, the court considered whether RCW 9.94A.533(6) required a court to run school bus route stop sentence enhancements on multiple counts consecutively to, or concurrently with, one another.[74] This subsection used language similar to that in the version of subsection (7) in effect at the time of Anderson's offenses. It stated, "All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter."[75] Our Supreme Court determined that this language is ambiguous and, after viewing the statute in context and applying rules of statutory interpretation, held that this language does not require that the enhancements run consecutively to one another.[76]

---

[72] LAWS OF 2016, ch. 203, § 7.
[73] 183 Wn.2d 706, 355 P.3d 1093 (2015).
[74] Conover, 183 Wn.2d at 711.
[75] Conover, 183 Wn.2d at 711; RCW 9.94A.533(6).
[76] Conover, 183 Wn.2d at 707-08.

-20-

In examining subsection (6), the court compared it to subsections (3)(e) and (4)(e).[77] These subsections provide for consecutive firearm and deadly weapon enhancements, respectively, and state that the enhancements "shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements."[78] The court reasoned that because subsections (3)(e) and (4)(e) explicitly require their respective enhancements to run consecutively to other enhancements and subsection (6) does not, the legislature did not intend the enhancements in subsection (6) to run consecutively to one another.[79] It stated that a contrary interpretation would make the additional language in subsections (3)(e) and (4)(e) superfluous.[80]

Anderson maintains that because the version of subsection (7) in effect at the time he committed vehicular homicide used language identical to that in subsection (6), our Supreme Court's reasoning in Conover controls. The State responds that the current statute should apply because the 2016 amendment was a clarifying amendment that did not create new law. Our Supreme has stated, "Although we generally presume that a new legislative enactment is an amendment that changes a law, the presumption may be rebutted by clear

---

[77] Conover, 183 Wn.2d at 712.
[78] Conover, 183 Wn.2d at 712; RCW 9.94A.533(3)(e), (4)(e).
[79] Conover, 183 Wn.2d at 712-13.
[80] Conover, 183 Wn.2d at 718.

evidence that the legislature intended an interpretive clarification."[81] "A statutory amendment will be applied retroactively, if constitutionally permissible under the circumstances, when it is . . . curative in that it clarifies or technically corrects ambiguous statutory language."[82]

Two circumstances present here indicate that the amendment is a clarification: the original statute was ambiguous and the amendment followed uncertainty about the meaning of the original statute.[83] First, based on the Washington Supreme Court's reasoning in Conover, subsection (7) is ambiguous. Second, in the legislative session following Conover, the legislature did not amend subsection (6) but, instead, amended subsection (7) to its current form quoted above. The final bill report for this amendment states, under the heading "Washington v. Conover," "It is clarified that Vehicular Homicide-DUI sentence enhancements are mandatory, must be served in confinement, and they must be served consecutively to the person's standard sentence and any other impaired driving enhancements."[84] This is clear evidence that the legislature intended an interpretative clarification.

---

[81] Gray v. Suttell & Assocs., 181 Wn.2d 329, 342, 334 P.3d 14 (2014).
[82] Barstad v. Stewart Title Guar. Co., 145 Wn.2d 528, 536-37, 39 P.3d 984 (2002).
[83] Gray, 181 Wn.2d at 342-43.
[84] FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 2700, at 4, 64th Leg. Reg. Sess. (Wash. 2016).

Anderson contends that it is not a clarifying amendment because the legislature had ample opportunity to amend subsection (7) after Washington Supreme Court cases earlier than Conover holding that similar language was ambiguous and did not require that enhancements run consecutively to one another. But because the legislature had opportunity to clarify subsection (7) in the past and did not does not mean that the 2016 amendment was not a clarification. The 2016 amendment to RCW 9.94A.533(7) was a clarifying amendment that applies retroactively to Anderson. Thus, the trial court did not exceed its statutory authority in running his sentencing enhancements for each of his two prior offenses consecutively to one another.

## V. Restitution Order

Anderson next claims that the trial court also exceeded its statutory authority by imposing $87,437.15 in restitution for Vaccaro's medical expenses because the record does not establish a sufficient causal connection between these expenses and his injuries caused by the crash. As a preliminary issue, the State contends that Anderson cannot assert this issue on appeal because he did not object below. We agree.

Generally, a party may raise on appeal only those issues raised at the trial court.[85] But RAP 2.5(a)(1) permits a party to raise lack of trial court jurisdiction

---

[85] In re Det. of Brown, 154 Wn. App. 116, 121, 225 P.3d 1028 (2010); RAP 2.5(a).

for the first time on appeal. Anderson does not contest that his trial attorney did not object to the restitution order. He claims that because the trial court improperly ordered restitution, it acted outside of its statutory authority, which he can challenge for the first time on appeal under RAP 2.5(a)(1). He cites a footnote in State v. Fleming[86] to support this argument. On appeal to this court, Fleming claimed that the trial court erred in awarding $300 in restitution for goods associated with an uncharged crime.[87] Although this court noted that Fleming did not challenge the restitution order based on a lack of jurisdiction, this court stated, "[I]f the trial court improperly ordered restitution for the $300, it was outside of its statutory authority, a challenge which can be made for the first time on appeal."[88]

The State responds that Fleming does not control because, here, it is not at issue whether the trial court exceeded its statutory authority by awarding restitution, for example, for an uncharged crime or for damages clearly not related to the crime. We agree that because Anderson is asserting that only some of Vaccaro's claimed medical expenses did not result from the collision, he has not challenged the trial court's jurisdiction. Instead, at issue is whether the

---

[86] 75 Wn. App. 270, 276 n.3, 877 P.2d 243 (1994).
[87] Fleming, 75 Wn. App. at 276.
[88] Fleming, 75 Wn. App. at 276 n.3.

-24-

trial court abused its discretion[89] by awarding Vaccaro almost $90,000 in restitution. Anderson did not preserve this issue on appeal, and we decline to review it.

VI. <u>Ineffective Assistance of Counsel</u>

Anderson also claims ineffective assistance of counsel because his trial counsel did not object to Vaccaro's restitution award. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel.[90] To prove ineffective assistance, an appellant must show that (1) counsel provided representation so deficient that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him.[91] This court gives counsel's performance great deference and employs a strong presumption of reasonableness.[92] The reasonableness inquiry requires that the defendant show the absence of legitimate strategic or tactical reasons for the challenged conduct.[93] A defendant shows prejudice when there is a reasonable

---

[89] <u>State v. Enstone</u>, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999) (stating a court abuses its discretion when its restitution order is manifestly unreasonable or based on untenable grounds or reasons).

[90] <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[91] <u>Strickland</u>, 466 U.S. at 687; <u>State v. Thomas</u>, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

[92] <u>State v. Grier</u>, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

[93] <u>State v. McFarland</u>, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

probability that but for counsel's errors, the result of the trial would have been different.[94] Claims of ineffective assistance present mixed questions of law and fact that this court reviews de novo.[95]

A statute provides the trial court's authority to order restitution to crime victims.[96] A court's restitution award

> shall be based on . . . actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense.[97]

"Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person . . . unless extraordinary circumstances exist which make restitution inappropriate."[98] A restitution award "must be based on a causal relationship between the offense charged and proved and the victim's losses or damages."[99] Proof of expenditures or a summary of medical treatment do not necessarily establish a causal connection because "it is often not possible to determine from such documentation whether all the costs incurred were related to the offender's crime."[100] The Washington Supreme Court has stated,

---

[94] State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).
[95] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).
[96] State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).
[97] RCW 9.94A.753(3).
[98] RCW 9.94A.753(5).
[99] State v. Johnson, 69 Wn. App. 189, 191, 847 P.2d 960 (1993).
[100] State v. Dennis, 101 Wn. App. 223, 227, 6 P.3d 1173 (2000).

"The legislature intended 'to grant broad powers of restitution' to the trial court."[101]

Anderson relies on State v. Hassan[102] to support that his counsel provided ineffective assistance by not objecting to Vaccaro's restitution award. There, Hassan told his friend, Tiffany Gilpin, that he would loan her $1,000 to help repair her car.[103] Hassan gave her a $2,400 check, asked her to deposit it, and then withdraw $1,400 to give him because it was an easier method of getting cash than going to his bank.[104] Gilpin followed these instructions, after which Hassan's check did not clear.[105] A jury convicted Hassan of unlawful issuance of a bank check.[106] At sentencing, Hassan's counsel objected to the State's request for $2,400 in restitution to Gilpin, claiming only that Hassan had repaid $400 to her.[107] The trial court ordered Hassan to pay the full $2,400, and Hassan appealed, claiming ineffective assistance.[108] Division Two of this court held that Hassan's trial attorney provided ineffective assistance, reasoning that the record did not support Gilpin suffered a loss resulting from the $1,000 loan she thought

---

[101] Tobin, 161 Wn.2d at 524 (quoting State v. Davison, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991)).
[102] 184 Wn. App. 140, 336 P.3d 99 (2014).
[103] Hassan, 184 Wn. App. at 144.
[104] Hassan, 184 Wn. App. at 144.
[105] Hassan, 184 Wn. App. at 144.
[106] Hassan, 184 Wn. App. at 143-44.
[107] Hassan, 184 Wn. App. at 144.
[108] Hassan, 184 Wn. App. at 145, 150-51.

she was receiving, so the evidence did not show that she sustained more than a $1,400 loss.[109]   And there was no conceivable tactical reason for Hassan's counsel not to object.[110]

Anderson also cites State v. Dennis[111] and State v. Bunner[112] to support that the causal relationship between Vaccaro's medical expenses and the collision is insufficient.   In Dennis, Dennis pleaded guilty to assaulting several police officers, and the State asked for restitution for two officers' medical expenses.[113]   This court held that the State established the required causal connection between Officer Zsolt Dornay's injuries and the assault but failed to do so for Officer Aaron Libby.[114]   This court reasoned that a letter from the State's victim assistance unit and probable cause certification stating that the officers were treated at Northwest Hospital "for their injuries" and the workers' compensation letter describing Dornay's injuries sufficiently established a causal connection.[115]   But it held that evidence showing Northwest Hospital treated Libby for injuries on an unknown date was not sufficient.[116]

---

[109] Hassan, 184 Wn. App. at 152.
[110] Hassan, 184 Wn. App. at 152.
[111] 101 Wn. App. 223, 6 P.3d 1173 (2000).
[112] 86 Wn. App. 158, 936 P.2d 419 (1997).
[113] Dennis, 101 Wn. App. at 224-25.
[114] Dennis, 101 Wn. App. at 225.
[115] Dennis, 101 Wn. App. at 227-28.
[116] Dennis, 101 Wn. App. at 228.

In Bunner, Bunner pleaded guilty to rape of a child in the second degree, and the State asked that he pay restitution.[117] The State offered a Department of Social and Health Services medical report listing medical services charged and the amount the State had paid.[118] In accepting the State's concession that this report did not establish a sufficient causal connection, this court reasoned, "[T]his summary, which does not indicate why medical services were provided, fails to establish the required causal connection between the victim's medical expenses and the crime committed."[119]

Here, Jacob Vaccaro,[120] Vaccaro's brother, testified that Vaccaro was in a coma at Harborview Medical Center for a month after the October 25, 2014, crash. He also testified that Vaccaro did cognitive and physical therapy for months. Dr. Lisa Cooper, who treated Vaccaro in the emergency room on the day of the collision, described his injuries and treatments, including a diagnosis of traumatic brain injury. Dr. Aaron Bunnell, a rehabilitation medicine doctor at Harborview Medical Center, testified that Vaccaro was his patient in inpatient rehabilitation at the hospital starting in December 2014. Bunnell described

---

[117] Bunner, 86 Wn. App. at 159.
[118] Bunner, 86 Wn. App. at 159.
[119] Bunner, 86 Wn. App. at 159-60.
[120] For purposes of clarity, we refer to Jacob Vaccaro as Jacob and James Vaccaro as Vaccaro.

Vaccaro's injuries and their effects on Vaccaro's functionality, including "a number of features of a severe traumatic brain injury."

At the restitution hearing, the State asked for $87,437.15 in restitution for medical services provided to Vaccaro. In support of this claim, the State provided a claim summary prepared by the insurance company that detailed the service dates, provider names, diagnosis codes, and amounts billed and paid. The State also attached a sheet detailing the diagnosis related to each code. The claim summary shows that medical services began on October 25, 2014, the date of the incident, and concluded on June 13, 2016, with the majority of the services provided before January 2015. The diagnoses associated with these services relate to injuries that Cooper and Bunnell specifically attributed to Vaccaro in their testimony or are reasonably associated with the injuries Cooper and Bunnell described. These include head and brain injuries, lung injuries, extremity injuries, abnormal gait, and coma, among others. The majority of treatment after January 31, 2015, was for "late effect of intracranial injury without mention of skull fracture."

Anderson contends that similar to Hassan, Dennis, and Bunner, any causal connection is insufficient. He claims that the testimony at trial fails to establish the required causal connection because none of the witnesses offered specific dates associated with medical treatment, how much the treatment cost,

whether it was paid, and, if so, by whom. Anderson also maintains that neither the testimony at trial nor the documentation the State presented at the restitution hearing supports that the treatment Vaccaro received after January 2015 was related to the incident.

The testimony at trial describing most of Vaccaro's injuries and treatments and stating critical dates, together with the detailed claim summary and diagnoses sheet, establish a sufficient causal connection between Vaccaro's medical expenses and his injuries resulting from the collision. This evidence, unlike that presented in Dennis and Bunner, shows why medical services were provided and includes the service dates. And, unlike Hassan, the State requested restitution only for unpaid costs Vaccaro actually incurred.

Because the State provided evidence to establish a sufficient causal connection between Vaccaro's medical treatment and the incident, the trial court did not abuse its discretion by awarding Vaccaro almost $90,000 in restitution. Counsel's performance did not fall below an objective standard of reasonableness because he did not object to a restitution award that was within the trial court's discretion. Anderson does not show his trial attorney provided ineffective assistance.

## VII. DNA Fee

Anderson asserts that State v. Ramirez[121] requires that this court strike the $100 DNA collection fee imposed as part of his sentence. We agree.

In Ramirez, our Supreme Court discussed and applied House Bill (HB) 1783, which became effective June 7, 2018, and applies prospectively to all cases on direct appeal.[122] Our Supreme Court explained that HB 1783 categorically prohibits the imposition of discretionary LFOs on indigent defendants.[123] HB 1783 also amends the DNA fee statute[124] to establish that "the DNA database fee is no longer mandatory if the offender's DNA has been collected because of a prior conviction."[125]

Here, the sentencing court imposed a $100 DNA fee. After entry of judgment and sentence, the trial court found Anderson indigent. RCW 43.43.754(1)(a) requires collection of a biological sample for purposes of DNA identification analysis from every adult or juvenile convicted of a felony or certain other crimes. Anderson claims that because he has previous felony convictions, he would necessarily have had his DNA sample collected. He asserts that

---

[121] 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018).
[122] Ramirez, 191 Wn.2d at 738, 747; LAWS OF 2018, ch. 269.
[123] Ramirez, 191 Wn.2d at 739.
[124] RCW 43.43.7541.
[125] Ramirez, 191 Wn.2d at 747.

because he has previously had his sample collected and the trial court found him indigent, Ramirez requires that this court strike his DNA fee.

The State contends Anderson's factual assertion that he has previously submitted a DNA sample to the State fails on direct appeal if the record does not show that he actually submitted a DNA sample for a qualifying conviction. The State relies on State v. Lewis[126] and State v. Thornton[127] to support this argument. In both cases, this court and Division Three, respectively, denied the defendant's request that it strike the DNA fee because the judgment and sentence listing criminal history was not sufficient to show that the defendant had submitted a DNA sample to the Washington State Patrol Crime Laboratory.

But both Lewis and Thornton were decided before Ramirez. Before Ramirez, RCW 43.43.754(2) provided an exemption from the DNA fee only "[i]f the Washington state patrol crime laboratory already has a DNA sample from an individual for a qualifying offense."[128] HB 1783 makes the DNA fee discretionary if the defendant's DNA has been collected because of a prior conviction; it does not require that the defendant provide proof that the laboratory has his DNA sample. Post-Ramirez, in State v. Maling,[129] Division Three of this court struck

---

[126] 194 Wn. App. 709, 720-21, 379 P.3d 129 (2016).
[127] 188 Wn. App. 371, 373-74, 353 P.3d 642 (2015).
[128] Lewis, 194 Wn. App. at 720.
[129] 6 Wn. App. 2d 838, 844, 431 P.3d 499 (2018), review denied, 193 Wn.2d 1006 (2019).

Maling's DNA fee because he was indigent at the time of sentencing and his "lengthy felony record indicates a DNA fee has previously been collected." Similarly, because Anderson has been convicted of prior felonies, for which RCW 43.43.754(1)(a) required collection of a DNA sample, the DNA fee is discretionary. And because the trial court found him indigent and Ramirez prohibits the imposition of discretionary LFOs on indigent defendants, we remand for the court to strike the DNA fee from Anderson's judgment and sentence.

## VIII. Statement of Additional Grounds for Review

Anderson raises a number of issues in his statement of additional grounds for review (SAG). These relate to probable cause, ineffective assistance of counsel, prosecutorial misconduct, judicial misconduct, and sufficiency of the evidence. Although a defendant is not required to cite to the record or authority in his SAG, he must still "inform the court of the nature and occurrence of [the] alleged errors."[130] This court is not required to search the record to find support for the defendant's claims.[131] Anderson appears to claim (1) the fruit of the poisonous tree doctrine barred admission of the statements he made at the scene of the incident because he was under duress; (2) the prosecutor committed misconduct because she admitted to not having probable cause, used improper phrasing, and tampered with a witness; (3) his trial counsel provided

[130] RAP 10.10(c).
[131] RAP 10.10(c).

ineffective assistance by failing to object in a number of instances; and (4) the trial judge committed judicial misconduct because she was prejudiced against him. Because Anderson's claimed errors lack specificity and would require this court to search the record for any support, we decline to review them.

## CONCLUSION

Whether Anderson's prior reckless driving conviction qualifies as a "prior offense" for purposes of enhancing his term of imprisonment for vehicular homicide involves a question of fact that a jury must decide. We remand for the superior court to empanel a jury to decide this question and for the court to strike the DNA fee.

_Leach, J._

<u>State of Washington v. Nicholas Windsor Anderson</u>, No, 76672-4-I (consolidated with No. 78070-1-I)

CHUN, J. (dissenting in part) — We concur with all aspects of the lead opinion except section III., which regards the "Fact Question for the Jury On Remand." This opinion constitutes the majority view on this discrete issue.

In <u>City of Walla Walla v. Greene</u>, our Supreme Court stated that former RCW 46.61.5505(12)(a)(v) (2003) requires "the State to establish that a prior driving conviction involved use of intoxicating liquor or drugs." 154 Wn.2d 722, 727-28, 116 P.3d 1008 (2005). According to the court, this proof of involvement of intoxicating liquor or drugs satisfies due process and preserves the constitutionality of the statute. 154 Wn.2d at 728. Rather than dicta, this language serves to save a statute that would otherwise unconstitutionally allow for a sentencing enhancement based on a charge not proven beyond a reasonable doubt. Requiring a jury to find only that a reckless driving offense was originally charged as a DUI leads back to the issues of constitutionality supposedly cured by <u>Greene</u>. In keeping with the reasoning of <u>Greene</u>, we conclude the State must prove to a jury that drugs or alcohol were involved in the prior offense in order to satisfy due process.

_Chun, J._

I CONCUR:

_Andrus, J._